**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| SARAH C.,[1] | : | Case No. 1:25-cv-00592 |
| | : | |
| Plaintiff, | : | District Judge Jeffery P. Hopkins |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Sarah C. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record. (Doc. #6).

## I. <u>Background</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff applied for benefits on September 6, 2023, alleging disability commencing January 30, 2023, due to a catatonic disorder and depression. (Doc. #6-9, *PageID* #847). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Anne Shaughnessy on September 24, 2024. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 30, 2023, the alleged onset date.

Step 2: She has the following severe impairments: major depressive disorder and generalized anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability "to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can understand, remember and carry out simple instructions, perform simple repetitive tasks, respond appropriately to brief supervision, and deal with changes in a routine work setting."

Plaintiff is unable to perform any past relevant work.

Step 5: Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #6-2, *PageID* #s 35-42). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act since January 30, 2023. *Id.* at 42.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6-2, *PageID* #s 33-42), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

On appeal, Plaintiff raises numerous assignments of error: (1) the ALJ erred in failing to consider, at the least, a closed period of disability under 20 C.F.R. § 404.1509; (2) the ALJ erred in her evaluation of the medical opinions of the state agency psychological consultants, Ann Lovko, Ph.D., and David Dietz, Ph.D., and treating physician, Danielle Johnson, M.D.; (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and (4) the ALJ erred in asking improper hypothetical questions to the vocational expert.[3] (Doc. #7, *PageID* #s 2489-98).

The Commissioner counters that the ALJ properly evaluated the record according to the applicable regulations, including the medical opinions and Plaintiff's subjective symptoms. (Doc. #9, *PageID* #s 2504-13).

### A. Closed Period of Disability

Plaintiff argues that the ALJ erred in failing to consider a closed period of disability. (Doc. # 7, *PageID* #2494). Specifically, Plaintiff contends that the ALJ erred in not having a narrative discussion of this in her decision. *Id.*

Disability benefits can be awarded for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). An individual who meets the 12-month durational requirement of 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A) may be entitled to benefits from the time his disability commences until such time as the disability ceases. *Lang v. Secretary of Health & Human Services*, No. 88–1561, 875 F.2d 865, at *2 (6th Cir. April 12, 1989) (citing *Myers*, 471 F.2d 1265; *Howse v. Heckler*, 782 F.2d 626 (6th Cir. 1986)); *see* 20 C.F.R. § 404.1509. An ALJ is not required to use

[3] Plaintiff's arguments were presented in a different order. (*See* Doc. #7). For ease of reference, the undersigned will address Plaintiff's arguments in the above order.

any particular "magic words" to indicate that she has considered whether a closed period of disability is warranted. *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-CV-1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). However, the ALJ must consider "every period during which [the plaintiff] may have been disabled." *Cash v. Comm'r of Soc. Sec.*, No. 3:16-CV-175, 2017 WL 3473813, at *4 (S.D. Ohio Aug. 14, 2017) (Newman, M.J.) (internal citation omitted), *report and recommendation adopted*, No. 3:16-cv-175, 2017 WL 3769371 (S.D. Ohio Aug. 29, 2017) (Rice, D.J.).

In the instant case, Plaintiff alleges that she was unable to sustain any work for forty hours each week from January 30, 2023, to April 8 or 16, 2024, which spans over twelve consecutive months. (Doc. #7, *PageID* #2494). Contrary to Plaintiff's argument, the ALJ extensively engages with the entire body of evidence in the record, but especially with the period of January 2023 through July 2024. (Doc. #6-2, *PageID* #s 38–39).

The ALJ notes that Plaintiff was admitted to the Linder Center of Hope on January 30, 2023, presenting in a catatonic state and unable to care for herself. *Id.* at 38. Following an array of treatments—including medication, therapy, and ECT—Plaintiff was discharged on February 27, 2023. *Id.* On the day of her discharge, Plaintiff presented as calm and cooperative, future-oriented "with plans to spen[d] time with family," and not grossly impaired; the examination report states that she was not a danger to herself and she no longer met the criteria for involuntary hospitalization. *Id.*

The ALJ also indicated that, in March 2023, Plaintiff began outpatient ECT, reporting that she was "doing better," although she was still not permitted to drive. *Id.* Again, examination reports indicated that Plaintiff was cooperative with no psychomotor abnormalities and no delusions. *Id.*

Plaintiff was fully oriented, her mood was stable ("euthymic"), her memory was intact, her executive function was intact with no evidence of deficits, and her insight and judgment were good. *Id.* However, her speech was described as delayed and soft, and she had a blunted affect. *Id.*

The ALJ highlighted that, in May 2023, Plaintiff reported increased anxiety around returning to work, despite continued treatment. *Id.* She also reported conflict occurring within her family. *Id.* at 38–39. Around this time, Plaintiff was admitted to a partial hospitalization program for ten days. *Id.* at 39. She saw improvements to her anxiety and sleep disruptions but her unresolved grief remained. *Id.*

The ALJ observed that, in June 2023, following her discharge from the partial hospitalization program, Plaintiff again reported feelings of anxiety around returning to work. *Id.* Plaintiff's medical providers also added a new medication to her regimen during this time. *Id.* Likewise, in July 2023, Plaintiff's medical team increased some of her medications. *Id.* Plaintiff continued to attend regular psychotherapy appointments. *Id.* An examination around this time showed that Plaintiff was alert and oriented with normal mood and affect. *Id.* However, in September 2023 and again in November 2023, Plaintiff was depressed with a flat affect and impaired memory. *Id.* Her fund of knowledge remained intact. *Id.*

The ALJ continued her evaluation of the record by highlighting a January 2024 examination, which indicated that Plaintiff was well-groomed, cooperative, and fully oriented. *Id.* While Plaintiff showed no psychomotor abnormalities and no delusions, her mood was depressed and her short-term memory was impaired from ECT. *Id.* However, Plaintiff's affect was euthymic, her thought process was well-organized and goal-directed, and her insight and judgment were

good. *Id.* The report indicated that Plaintiff was seeing improvements with continued ECT and medication increases, so much so that she was able to help her father take care of her mother. *Id.*

The ALJ further noted that, in February 2024, Plaintiff indicated she was experiencing caretaker stress but also continued to go to the gym and attended her nephew's sporting events. *Id.* In April 2024, records show that Plaintiff was stable and therapy sessions with Chris Tuell were discontinued. *Id.* By June 2024, Plaintiff continued to go to the gym and began seeing friends. *Id.* She continued to attend group and individual therapy sessions and manage her medication to maintain her improved sleep and stable mood. *Id.* In July 2024, Plaintiff reported "okay mood and she had not been anxious." *Id.*

The undersigned finds the ALJ's analysis of the entirety of the record, including the proposed "closed period," to be well supported. The state agency physicians considered much of the same evidence and also did not find evidence of a closed period of disability. It is clear that the ALJ considered all of the medical evidence related to the closed period, and her conclusion that Plaintiff was not disabled includes a finding that she was not entitled to a closed period of disability. *Sielaff*, 2012 WL 567614, at *1. Therefore, the undersigned recommends that the Court find Plaintiff's first assignment of error unpersuasive.

**B. Evaluation of Medical Source Opinions**

Next, Plaintiff asserts that the ALJ failed to build an accurate and logical bridge between her analysis of the opinion evidence and the findings contained within the RFC. (Doc. #7, *PageID* #2491).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on

all the relevant evidence in his case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors. 20 C.F.R. § 404.1520c(b)(2). While the regulations state that ALJs "*may* . . . explain how [they] considered" the other various factors, these same regulations mandate that an ALJ "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Supportability "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Kenneth M. v. Comm'r of Soc. Sec.*, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.), quoting *Reuse v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (internal citations omitted). When evaluating supportability, the more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). Failing to discuss either supportability or consistency requires remand. *Kenneth M.*, 2025 WL 1948987, at *12; *Whalen v. Comm'r of Soc. Sec.*, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)) ; *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8.

Before formulating Plaintiff's RFC, the ALJ found that Plaintiff had two severe impairments: major depressive disorder and generalized anxiety disorder. (Doc. #6-2, *PageID* #s

35–36). The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meet or medical equal any of the impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 36–37. In reaching this conclusion, the ALJ found that Plaintiff was limited in four areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintain pace; and adapting or self-management. *Id.* at 36–37.

First, the ALJ found that Plaintiff is moderately limited in her understanding, remembering, and applying information. *Id.* at 36. The ALJ noted that Plaintiff reports impaired memory due to ECT. *Id.* However, the ALJ also stated that treatment notes indicate her memory was intact, records state that Plaintiff has average intellectual functioning and an intact fund of knowledge, and while her father was her legal guardian during her catatonic state, there was no evidence in the record "suggesting the ongoing need for a guardianship." *Id.*

Second, the ALJ found Plaintiff was moderately limited in her ability to interact with others. *Id.* The ALJ discussed Plaintiff's ability to shop in stores when accompanied as well as her supportive relationship with her parents and her regular interactions with her sister. *Id.*

Third, the ALJ found that Plaintiff was moderately limited in her ability to concentrate, persist, or maintain pace—noting that Plaintiff reported she could not pay attention for more than 30-40 minutes, did not finish what she started, and had difficulty following instructions. *Id.* at 37. The ALJ explained that she is not more than moderately restricted in this area as evidenced by her ability to "concentrate and maintain pace sufficient to drive, and that she is able to aid in the care [of] her mother…." *Id.*

Finally, the ALJ found that Plaintiff is moderately limited in her ability to self-manage or adapt on a day-to-day basis, highlighting Plaintiff's reports of a lack of motivation to manager her

personal hygiene, inability to cook, and inability to do the laundry. *Id.* The ALJ explained that she is not more than moderately restricted in this area as evidenced by her father's testimony that she was able to cook and do laundry, by reports of good hygiene in mental health presentations, and by her ability to participate in the care of her mother. *Id.*

***State Agency Psychological Consultants***

Plaintiff argues that the ALJ failed to adequately explain why she found Plaintiff moderately limited in all four areas rather than adopting the two moderate limitations and two mild limitations opined by the state agency psychological consultants. (Doc. #7, *PageID* #2491).

In formulating Plaintiff's mental RFC, ALJ Shaughnessy considered the opinion of state agency psychologist Ann Lovko, Ph.D., who reviewed Plaintiff's records on December 20, 2023. (Doc. #6-2, *PageID* #40) (citing Doc. #6-3, *PageID* #s 79-87). Dr. Lovko found mild impairment in the "B Criteria" areas of interacting with others and adapting or managing oneself. *Id.* at 84. She found moderate limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *Id.* In the mental RFC section of the form, Dr. Lovko found that Plaintiff could understand, carry out and remember simple instructions; was able to make judgments commensurate with functions of simple, repetitive tasks; was able to respond appropriately to brief supervision and work situations; and was able to deal with changes in a routine work setting. (Doc. #7-3, *PageID* #87).

The ALJ also considered the opinion of state agency psychologist David Dietz, Ph.D., in the formulation of Plaintiff's mental RFC. (Doc. #6-2, *PageID* #40) (citing Doc. #6-3, *PageID* #s 91-96). Dr. Dietz reviewed Plaintiff's file upon reconsideration on March 9, 2024, and affirmed Dr. Lovko's assessment. *Id.* at 96.

ALJ Shaughnessy found the prior administrative medical findings of Dr. Lovko and Dr. Dietz to be persuasive. (Doc. #6-2, *PageID* #40). She noted the opinions were "supported and consistent with the other medical evidence of record." *Id.* Specifically, the ALJ noted that Plaintiff's condition improved with consistent treatment, including medication, therapy, and ECT, to the point that the most recent records note an "okay mood" and that she had not been anxious. *Id.* (citing *id.* at 1855–57). The ALJ noted that "[t]hese restrictions are also sufficient to fully accommodate [Plaintiff]'s moderate level functional limitations as determined in the above 'B' criteria determinations." *Id.*

Plaintiff correctly points out that, while Dr. Lovko and Dr. Dietz found Plaintiff had mild limitations in her ability to interact with others and adapt or manage herself, the ALJ found moderate limitations in these areas. However, the ALJ discusses evidence in the record that supports her finding of moderate limitations, specifically regarding these two areas as well as the remaining two areas, at length, as summarized above. (Doc. #6-2, *PageID* #s 35–36). The ALJ has met the minimum level of articulation necessary to avoid frustrating the court's ability to determine whether the ALJ has built an "accurate and logical bridge between the evidence and [her] conclusion," *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011); *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. 1999)), and in doing so has adequately contemplated and addressed the extent and degree of Plaintiff's limitations. Furthermore, Plaintiff fails to argue that the ALJ's failure to adopt the less restrictive mental limitations would have altered the non-disability determination in her favor. *Rabbers v. Comm'r v. Soc. Sec. Admin*., 582 F.3d 647, 654 (6th Cir. 2009) ("[W]e review decisions of administrative agencies for harmless error.") (citing *Heston v. Comm'r of Soc. Sec*., 245 F.3d 528,

535 (6th Cir.2001); *NLRB v. Wyman-Gordon Co*., 394 U.S. 759, 766 n. 6 (1969) (explaining that precedent "does not require that we convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality.").

Therefore, the undersigned recommends that this Court find the ALJ did not err in her treatment of the opinions of Dr. Lovko and Dr. Dietz.

***Dr. Johnson***

Next, Plaintiff alleges that the ALJ erred by failing to discuss a form that Plaintiff's treating physician completed in August 2024, which "defined 'seriously limited but not precluded' as less than satisfactory." (Doc. #7, *PageID* #2491).

In August 2024, Danielle Johnson, M.D., reported that she treated Plaintiff for major depressive disorder, recurrent; generalized anxiety disorder; insomnia; and grief. (Doc. #6-12, *PageID* #1862). Dr. Johnson noted that Plaintiff's memory complaints were subjective. *Id.* at 1863. She opined that Plaintiff could carry out very short and simple instructions, maintain attention for 2-hour segments, maintain regular attendance, and sustain an ordinary routine without special supervision. *Id.* at 1864. In addition, she opined that Plaintiff's ability to understand, remember, and carry out detailed instructions was seriously limited but not precluded. *Id.* at 1865. In September 2024, Dr. Johnson prepared a narrative report adding that Plaintiff's concern with not remembering how to do aspects of her job, coupled with ongoing depression, contributed to ongoing need for disability. *Id.* at 1869.

The ALJ found Dr. Johnson's assessment to be "mostly persuasive," reasoning that the ability to perform simple instructions and maintain attention was consistent with moderate limitations based on an evaluation of the evidence, as outlined in her B criteria assessment. (Doc.

#6-2, *PageID* #s 40–41). However, the ALJ concluded that the doctor's finding of "serious" limitations was vague and inconsistent with Dr. Johnson's finding that Plaintiff retained the ability to carry out simple instructions, and accordingly, that portion of the assessment was not supported. *Id.* at 41. Additionally, the ALJ reasoned that Dr. Johnson's assessment was based on Plaintiff's subjective complaints and not appropriately based on the objective evidence. *Id.* Finally, the ALJ noted that a finding of the need for disability is a determination on an issue reserved for the Commissioner of the Social Security Administration. *Id.*

Plaintiff's argument is not well taken, as the ALJ discussed Dr. Johnson's opinion that Plaintiff was "seriously limited but not precluded" in her ability to "understand, remember, and carry out detailed instructions." (Doc. #6-2, *PageID* #40). According to the form, a finding that someone is "seriously limited but not precluded" is defined as plaintiff's ability to function in the given area being "seriously limited and less than satisfactory, but not precluded in all circumstances." *Id.* at 1864; (Doc.. #7, *PageID* #2491). While the ALJ does not expressly recite this definition in her opinion, she is not required to do so. *Thacker v. Comm'r of Soc. Sec*., 99 F. App'x 661, 665 (6th Cir. 2004) (finding that an ALJ is not required to discuss "every piece of evidence in the record for [her] decision to stand," if she considered the evidence). It is clear from the ALJ's opinion, when read as a whole, that she considered the form at issue. (Doc. #6-2, *PageID* #s 40–41). The ALJ also expressly engaged with the exact limitation at issue; the ALJ found that Dr. Johnson's opinion was generally consistent with the moderate limitations opined in previous steps but also found that a finding of "serious" limitations was vague and inconsistent with Dr. Johnson's own findings that Plaintiff could carry out simple instructions. *Id.* at 41. Accordingly, the ALJ found that Dr. Johnson's finding of "serious" limitations was unsupported. *Id.* The ALJ's

articulation and analysis of Dr. Johnson's opinion and translation of that opinion into a mental RFC is substantially supported.

To the extent that Plaintiff argues "seriously limited but not precluded" in certain areas would mean she is unable to perform those tasks, the undersigned finds this argument unpersuasive. "The plain meaning of 'seriously limited but not precluded' is that one is *not* precluded from performing in that area." *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) (emphasis in original). Plaintiff asserts she "cannot perform the three unskilled jobs the ALJ found if her performance on the jobs is 'less than satisfactory' on such jobs," (Doc. #7, *PageID* #2491); however, Plaintiff fails to offer any evidence to that fact and failed to ask the vocational expert about this very issue. (*See* Doc. #6-2, *PageID* #s 74–76).

Therefore, because the ALJ adequately engaged with Dr. Johnson's opinion, as required by the regulations, the undersigned recommends that this Court reject Plaintiff's assignment of error.

**C. Symptom Severity**

Plaintiff next contends that the ALJ's subjective complaints analyis not supported in the record. (Doc. #7, *PageID* #s 2495-96). According to Plaintiff, the ALJ failed to build the accurate and logical bridge required of her in her evaluation of the subjective complaints under Ruling 16-3p (2016). *Id.* at 2496. Plaintiff also contends that the ALJ failed to discuss or evaluate the testimony of Plaintiff's father from the administrative hearing. *Id.*

When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR)

16-3p, 2016 WL 1119029, *3 (March 16, 2016)[4] determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *3-7; *see also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as

[4] Soc. Sec. R. (SSR) 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Regarding the first prong, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence. (Doc. #6-2, *PageID* #38). Regarding the second prong, however, the ALJ found that the record does not support Plaintiff's allegations of functional restrictions to the extent she alleged. Specifically, the ALJ determined that

> While [Plaintiff] was hospitalized for a month at the alleged onset date, even in the instance of a 10-day partial hospitalization program, her catatonic state did not recur. In addition, her anxiety appeared to be driven by custody and visitation issues concerning her nephew, caretaker stress related to helping her mother, and worry about returning to work at the conclusion of her short-term disability. However, the treatment record repeatedly notes her to be cooperative, with fluctuating mood, normal cognition, and general improvement with therapy, ECT treatments, and medication management. And while she reported short-term memory loss due to her ECT treatments, examinations also showed intact memory (Exhibit 4F/217, 465-466). In fact, her treatment provider repeatedly noted that her memory complaints were subjective (Exhibit 8F; 9F). Moreover, most recent examination notes show that her mood was okay and she had not been anxious (Exhibit 7F/28-30). Thus, considering her positive response to treatment, the undersigned finds that the evidence supports the moderate determinations in the above "B" criteria assessment.
>
> Finally, while [Plaintiff] testified that she experiences low back pain status-post 2019 surgery for herniated disc, which limited her to lifting 20 pounds, physical examinations were repeatedly normal (Exhibit 2F/7). Also, her participation in Zumba class is not consistent with the reports of standing and walking restrictions (Exhibit 5F/7).

(Doc. #6-2, *PageID* #s 39-40). In coming to this determination, the ALJ extensively considered Plaintiff's daily activities (*id.* at 36–37); the type, dosage, effectiveness, and side effects of any medication taken to alleviate her symptoms (*id.* at 38–39); the location, duration, frequency, and

intensity of pain or other symptoms (*id.* at 38–39, 40); and other factors concerning functional limitations and restrictions due to pain or other symptoms (*id.* at 36–41). Plaintiff has not pointed to any evidence in the record that the ALJ failed to consider. As the ALJ adequately explained her determinations, specifically noting that the objective medical evidence fails to support Plaintiff's subjective statements regarding her pain, the ALJ did not err in her treatment of Plaintiff's symptom severity.

Further, although Plaintiff argues that the ALJ erred by failing to consider her father's testimony, the ALJ did consider his testimony. (Doc. #6-2, *PageID* #s 36-37). The ALJ does not disregard or discredit father's testimony, and to the contrary, expressly engages with it. *Id.* (noting that, while Plaintiff reported that she does not cook or do laundry as a result of her alleged disability, Plaintiff's father testified that she was able to do laundry and wash dishes). Therefore, the undersigned recommends that the Court affirm the ALJ's findings and find Plaintiff's assignment of error unpersuasive.

**D. The ALJ's Step Five Determination**

Plaintiff argues that the ALJ erred under SSR 00-4p in finding Plaintiff could perform other jobs in the national economy with a reasoning level of 2, which would preclude the occupations provided by the vocational expert (VE). (Doc. #7, *PageID* #s 2496–98).

Social Security Ruling 00-4p clarifies, *inter alia,* SSA's standards for use of VEs who provide evidence before ALJs. The Ruling provides in relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE of VS evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether [Plaintiff] is

> disabled. At the hearings level, as part of the [ALJ's] duty to develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency**.**

SSR 00-4p; *see also Vega v. Comm'r of Soc. Sec*., No. 1:20-CV-01934-JRA, 2021 WL 6012038, at *6–7 (N.D. Ohio Dec. 3, 2021), *report and recommendation adopted,* No. 1:20CV1934, 2021 WL 6000037 (N.D. Ohio Dec. 20, 2021) (citing SSR 00-4p and noting that "[t]he ALJ must explain how she resolved the conflict regardless of how the conflict was identified. An ALJ's duty to resolve a conflict between the VE testimony and the DOT arises when the conflict is apparent to the ALJ."); *Hamilton v. Comm'r of Soc. Sec.*, No. 20-CV-11033, 2021 WL 1520007, at *7 (E.D. Mich. Mar. 31, 2021), *report and recommendation adopted,* No. 20-CV-11033, 2021 WL 1517933 (E.D. Mich. Apr. 16, 2021) (citing *Lindsley v. Comm'r of Soc Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) ("The ALJ has an affirmative duty, under SSR 00-4p, to ask the VE about any possible conflicts between the VE's testimony and the information as stated in the DOT.") (referencing SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704 (Dec. 4, 2000)). Neither the DOT nor the VE evidence "automatically 'trumps' when there is a conflict [thus,] the adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information." *Hamilton, at *7* (citing SSR 004-9p). Once the ALJ obtains a reasonable explanation from the VE, the ALJ is not required to further "conduct an independent investigation" to determine if the VE or other witness is correct. *Id*. (citing *Lindsley,* 560 F.3d at 606).

According to the Dictionary of Occupational Titles (DOT), a plaintiff's abilities comprise of three divisions: reasoning development, mathematical development, and language development. Dictionary of Occupational Titles, Appendix C — Components of the Definition Trailer, 979.687-

034 1991 WL 688702 (Jan. 1, 2016). The Reasoning Development division has six levels—with level one indicating the lowest level of capability and level 6 indicating the highest level of capability. *Id.* A job with a reasoning level of one requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." *Id*. A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

In the instant case, however, there is no conflict. As noted previously, ALJ Shaughnessy formulated an RFC that allowed Plaintiff to "understand, remember and carry out *simple instructions*, perform *simple repetitive tasks*, respond appropriately to brief supervision, and deal with changes in a routine work setting." (Doc. #6-2, *PageID* #37) (emphasis added). This Court, and as well as a host of others, have found that reasoning level 2 is consistent with the ability to perform simple, routine tasks. *See, e.g., Joyce v. Comm'r of Soc. Sec*., 662 Fed. Appx. 430 (6th Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 3:07-CV-300, 2008 WL 4405045, at *10 (S.D. Ohio Sept. 24, 2008) (Rice, D.J.); *Kerr v. Comm'r of Soc. Sec.*, No. 2:13-CV-457, 2014 WL 4243771, at *4 (S.D. Ohio Aug. 26, 2014) (Preston Deavers, M.J.) (finding that "a survey of governing authority reflects that the RFC limitation of 'one or two-step instructions' … corresponds with jobs classified at DOT Reasoning Development Level Two"); *Cooper v. Comm'r of Soc. Sec*., Case No. 3:07-CV-300, 2008 WL 4405045, at *10 (S.D. Ohio Sept. 24, 2008) (finding that "Plaintiff's limitation to low stress work with no production quotas, simple one or two-step tasks

requiring little, if any, concentration, and no complex or detailed instructions is not inconsistent with the ability to perform jobs with a reasoning Level of 2.”).

Further, while an ALJ has an affirmative duty to ask the VE if the evidence they provide “conflicts with the information provided in the DOT” and to resolve any “apparent conflicts,” SSR 00-4p, an ALJ satisfies her duty to inquire if she asks the VE whether the VE’s testimony is consistent with the DOT and receives an affirmative response. *See Martin v. Comm’r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). The ALJ has done so in this case. During the September 24, 2024 hearing, ALJ Shaughnessy posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #6-2, *PageID* #s 73–75). In response to the first hypothetical posed by the ALJ, the vocational expert was able to identify a significant number of jobs that would be available in the national economy for an individual with the specified limitations. *Id.* at 73. In response to the second hypothetical, which included a more restrictive exertional limitation, the vocational expert was also able to identify a significant number of jobs available. *Id.* at 74. The ALJ concluded her questioning of the vocational expert by asking “[i]s your testimony consistent with the Dictionary of Occupational Titles?” *Id.* The vocational expert replied that “[i]t’s fully consistent for all areas covered,” adding that “[a]nything outside of the scope of the DOT has been based upon my professional training and experience.” *Id.* Accordingly, the ALJ satisfied her affirmative duty, as required by Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8.

To the extent that Plaintiff argues that probationary periods for unskilled, entry-level jobs exceed Plaintiff’s limitation to brief supervision, Plaintiff does not provide argument beyond mere conclusory statements that amount to speculation. (Doc. #7, *PageID* #2497). At the hearing,

Plaintiff failed to engage with the vocational expert about the effect a probationary period would have on a similarly situated hypothetical individual's ability to perform the opined available jobs. (Doc. #6-2, *PageID* #s 74–76). This Court declines to go so far as to step into the shoes of the vocational expert in this regard.

Therefore, the undersigned recommends that this Court find Plaintiff's final assignment of error unpersuasive.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be **AFFIRMED**; and
2. The case be terminated on the Court's docket.

July 31, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).